JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
Diane Hester
D. Maimon Kirschenbaum
Matthew D. Kadushin
Amy Zobel
Michael D. Palmer
Denise A. Schulman

Counsel:
Michael DiChiara*
*Also admitted in NJ & MA

233 Broadway, 5th Floor
New, York, NY 10279
(212) 688-5640
Fax (212) 688-2548
www.JHLLP.com

December 20, 2012

**VIA EMAIL (NathanNYSDChambers@nysd.uscourts.gov)**

Honorable Alison J. Nathan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, NY 10007

      **Re: Zamboni, et al. v. Pepe West 48th Street LLC, et al.
      Case No. 12-cv-3157**

Dear Judge Nathan:

      We represent Plaintiffs in the above-referenced action. I write to respectfully request a conference with the Court to address the intimidation tactics Defendants are using to discourage putative FLSA collective members from opting in to this action and to obtain inaccurate declarations from putative FLSA collective members that purport to waive FLSA claims.

      As set forth in the attached declaration of Grigore Nemes (attached hereto as Exhibit 1), around the time that Court-ordered notice of this litigation was mailed to putative FLSA collective members, Mr. Nemes and other putative FLSA collective members were called into individual meetings with Defendants Peppe Iuelle and Enzo Ruggiero, as well as Defendants' attorney. Mr. Nemes was questioned about whether he worked overtime, and he responded that he did. About ten days later, Defendant Ruggiero approached Mr. Nemes in the middle of service and demanded that he sign a document. Defendant Ruggiero did not give Mr. Nemes an opportunity to read the document, and because Mr. Nemes was in the middle of work and was ordered by his employer to sign the document, he did so. Defendant Ruggiero subsequently refused Mr. Nemes's request to give Mr. Nemes a copy of the document he signed. Several of Mr. Nemes' coworkers told him that they had a similar experience. Mr. Nemes subsequently learned that the document he signed may have falsely stated that he did not work overtime, that he released claims against Defendants, and that he did not want to be a part of this lawsuit. Plaintiffs' counsel have asked Defendants' counsel for copies of the documents signed by Mr.

1

Nemes and other putative FLSA collective members, but Defendants have refused to produce them.

Based on the above, it is clear that Defendants and their counsel have sought manufacture testimony favorable to Defendants by tricking putative FLSA collective members into signing adverse and untrue declarations without giving putative FLSA collective members an opportunity to review the documents at issue. Their actions are also plainly aimed at discouraging putative FLSA collective members from opting in to this lawsuit, as the documents at issue may contain language purporting to waive overtime claims and stating a lack of desire to participate in this lawsuit.

"[W]hen a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005). When there is an ongoing business relationship between putative class members and a defendant, such as an employer-employee relationship, there is a heightened threat of coercion by the defendant. *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (*citing Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (5th Cir. 1985)). A court may remedy a defendant's improper communications with putative class members in several ways, including restricting future communications, invalidating exclusion requests that were a product of the improper communications, and requiring that corrective notice be sent to class members and posted in a public place. *See Kleiner*, 751 F.2d 1193; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 252; *Belt*, 299 F. Supp. 2d at 669-670.

Defendants here, with their attorneys' assistance, have acted expressly to discourage putative FLSA collective members to participate in or support this lawsuit. In order to ensure that aggrieved employees are able to assert their FLSA rights free of similar retaliation and intimidation, corrective action is necessary. In other cases where courts have determined that a defendant's actions may have discouraged putative FLSA collective members from opting in to a lawsuit or encouraged Rule 23 members to opt out a class action, courts regularly bar defendants, and, where defendants' attorneys have been involved in the improper communications, defendants' counsel from communicating with putative collective/class members about the litigation and order some form of curative notice. *E.g., Pefanis v. Westway Diner, Inc.*, 2009 U.S. Dist. LEXIS 121378 (S.D.N.Y. Dec. 29, 2009); *see also Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755, 2011 U.S. Dist. LEXIS 82204 (E.D.N.Y. July 27, 2011); *Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 45549 (E.D.N.Y. May 10, 2010) ("[D]efense counsel is directed not to communicate or cause his clients to communicate with class members on any matter related to this litigation unless prior consent is obtained by the Court or by class counsel. Although it should be clear and obvious, I stress that this Order prohibits defense counsel from attempting to persuade class members directly or through his clients to opt out of the class action.").

Moreover, in the event that the documents signed here by putative FLSA collective members in fact purport to waive FLSA claims, those waivers should be deemed invalid. *Lujan*, 2011 U.S. Dist. LEXIS 82204, at *4 (invalidating FLSA releases obtained by defendants' lawyer from putative FLSA collective members and noting that defendants' communications with putative FLSA collective members "might be coercive").

2

In light of the above, we respectfully request that the Court schedule a conference to discuss the issues set forth above and require Defendant Ruggeiro to attend the conference or, in the alternative, order that (1) Defendants and their attorneys be barred from communicating with putative FLSA collective members about this lawsuit; (2) a curative notice be mailed to putative FLSA collective members and posted at Defendants' restaurant; (3) the opt-in period be extended to 30 days after the mailing of the aforementioned curative notice; and (4) Defendants be required to produce the declarations or other signed documents at issue that they obtained from putative FLSA collective members.

Respectfully submitted,

D. Maimon Kirschenbaum

cc: Richard Milman, Esq.

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
COSMIN ZAMBONI, on behalf of himself
and other similarly situated individuals,

                Plaintiff,                INDEX NO. 12-CV-3157

    v.

PEPE WEST 48TH STREET LLC d/b/a LA
MASSERIA, PEPPE IUELE, ENZO
RUGGIERO, and PINO COLADONATO,

                Defendants.
-----------------------------------------------------------x

## AFFIDAVIT OF GRIGORE NEMES

    I, Grigore Nemes, under penalty of perjury, affirm that the following is true and correct:

1. I am a server at La Masseria restaurant in midtown Manhattan.

2. I opted in to the above-captioned lawsuit on December 19, 2012.

3. In or about early November 2012, about the same time when the waiters at La Masseria received a court-authorized notice regarding this Lawsuit, I was summoned into a meeting with La Masseria's lawyer.

4. Present at the meeting were me, an attorney for La Masseria, and Defendants Peppe Iuelle and Enzo Ruggiero.

5. During the meeting, the attorney asked me several questions regarding whether or not I worked overtime during my employment at La Masseria. I responded that I often worked overtime.

6. About ten days after the meeting, Defendant Enzo Ruggiero, approached me in the middle of my shift and instructed me to sign a several page document. Mr. Ruggiero did not give me time to read the document, and simply instructed me to sign it quickly. As it was in the middle of service, and I was given an explicit instruction by my employer, I signed the document under duress and not knowing what it said and went back to work.

7. Several days later, I asked Mr. Ruggiero for a copy of the document he instructed me to sign. Mr. Rugierro refused to provide me with a copy of the document.

1

8. Several of my coworkers informed me that they too were instructed by Mr. Ruggiero in the middle of service to sign similar documents without being afforded an opportunity to review them.

9. While I still do not have a copy of the document, it has been brought to my attention that the document may contain language that (a) states that I did not work overtime during my employment with Defendants, (b) I release Defendants from any claims for unpaid compensation, and/or (c) that I do not wish to be part of this Lawsuit.

10. Obviously, this is upsetting given that (a) as I told Defendants' attorney, I believe I worked substantial overtime during my employment with Defendants, (b) I never have had any desire to release Defendants from any money they owe me, and (c) I wish to be a part of this Lawsuit.

Dated: New York, NY
December 20, 2012

_____
Grigore Nemes

_____
Notary Public

MELANIE L. BERKOWITZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BE6269911
Qualified in King County
Commission Expires October 09, 2016

2