UNITED STATES DISTRICT COURT            **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
COSMIN ZAMBONI, on behalf of    : 12 Civ. 3157 (AJN) (JCF)
himself and others similarly     :
situated,                          :       MEMORANDUM
                                 :       <u>AND  ORDER</u>
            Plaintiff,        :
                                 :
     - against -             :
                                 :
PEPE WEST 48TH STREET LLC, d/b/a    :
LA MASSERIA, PEPPE IUELE, ENZO      :
RUGGIERO, and PINO COLADONATO,      :
                                 :
            Defendants.       :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

      This is a collective action brought under the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. § 201, <u>et</u> <u>seq.</u> The

plaintiffs allege that the defendants engaged in improper

communications with their employees, coercing them to waive their

right to participate in this action.  The plaintiffs have submitted

a letter application seeking an order (1) barring the defendants

from communicating with putative collective action members, (2)

requiring that the defendants provide curative notice to the

employees, and (3) extending the period for employees to opt in to

the collective action.  The motion is granted in part and denied in

part.

<u>Background</u>

      The Complaint alleges that the defendants violated the FLSA

rights of employees at La Masseria Restaurant in Manhattan by, among other things, denying them proper pay for overtime.[1]  After the case was filed, the parties stipulated to an order providing for notice to the employees of the pendency of the action, giving them sixty days to opt in.  (Order dated Sept. 11, 2012).

On December 20, 2012, after the opt-in period had closed, plaintiffs' counsel sent a letter to the Court alleging that the defendants had engaged in intimidation to discourage employees from opting in.  (Letter of D. Maimon Kirschenbaum dated Dec. 20, 2012).  Attached to the letter was the affidavit of one of the employees, a waiter named Grigore Nemes.  (Affidavit of Grigore Nemes dated Dec. 20, 2012 ("Nemes Aff.")).  According to Mr. Nemes, in early November 2012, he was summoned to a meeting with two of the owners of the restaurant and their attorney.  (Nemes Aff., ¶¶ 3-4).  When asked whether he had worked overtime at La Masseria, he responded that he had.  (Nemes Aff., ¶ 5). About ten days later, one of the owners presented Mr. Nemes with a document and instructed him to sign it quickly; he did so without reading it.  (Nemes Aff., ¶ 6).  When Mr. Nemes later asked for a copy of the document, the owner refused to provide one.  (Nemes Aff., ¶ 7).  Although he never received a copy of the document, Mr. Nemes stated:

---

[1] The plaintiffs also assert claims under New York Labor Law.

>       [I]t has been brought to my attention that the document
>       may contain language that (a) states that I did not work
>       overtime during my employment with Defendants, (b) I
>       release Defendants from any claims for unpaid
>       compensation, and/or (c) that I do not wish to be part of
>       this Lawsuit.

(Nemes Aff., ¶ 9). In fact, Mr. Nemes did not wish to release the
defendants from liability, he did want to opt in to this
litigation, and, as he had told defendants' counsel, he had worked
overtime. (Nemes Aff., ¶ 10).

Because the parties presented contradictory versions of the
facts, I conducted an evidentiary hearing. I also required the
defendants to produce the document that Mr. Nemes indicated that he
had signed.

At the hearing, Mr. Nemes testified that on a date in November
2012, as he was coming to the end of his shift, one of the owners,
Enzo Ruggiero, asked to speak with him. (Tr. at 4-5, 21-22, 34).[2]
Mr. Nemes accompanied Mr. Ruggiero to a conference room upstairs
where the other owner, Giuseppe Iulle, was present along with one
of defendants' counsel, David Berns. (Tr. at 6, 21, 24).
According to Mr. Nemes, Mr. Berns asked him his name, how long he
had been working at La Masseria, what shifts he worked, and whether
he worked overtime. (Tr. at 6-7, 22-23). He was not asked more

---

[2] "Tr." refers to the transcript of the hearing held on
February 21, 2013.

detailed questions such as whether he left the restaurant between
shifts, what time he arrived to work, and whether and when he took
meal breaks.  (Tr. at 7-8).  At the conclusion of the interview,
Mr. Berns told Mr. Nemes that Mr. Ruggiero would fill out the rest
of the information.  (Tr. at 9).  Approximately ten days later,
another employee approached Mr. Nemes and told him that Mr.
Ruggiero wanted to see  him in the office.  (Tr. at 10).  When he
arrived, Mr. Ruggiero allegedly handed him a piece of paper and
asked him to "read it quickly and sign it even quicker."  (Tr. at
11).  Mr. Nemes signed the document without reading it, and when he
later asked for a copy, Mr. Ruggiero said that it had already been
sent out.  (Tr. at 11-12).  A manager at the restaurant told Mr.
Nemes that anyone who signed the document could not join this
lawsuit.  (Tr. at 13).  When he ultimately saw a copy of the
document, Mr. Nemes discovered that it included information that he
had not been asked about and that was inaccurate.  (Tr. at 15-19).
Among other things, the document states, "I do not believe that I
am owed any monies for unpaid wages (regular or overtime for hours
worked beyond forty (40) hours per week) or for any other reasons,"
when in fact Mr. Nemes does believe he is owed money for wages and
has opted in to this lawsuit.  (Tr. at 15; Declaration of Greg
Nemes dated Nov. 18, 2012, admitted as Pl. Exh. A at hearing held
Feb. 21, 2013).

Mr. Ruggiero also testified at the hearing, and he presented a different picture.  He stated that the employees were interviewed in groups of three at a time, were told that the interviews related to the litigation, and were informed they were free not to participate.  (Tr. at 34-36, 38).  Mr. Berns asked the employees, including Mr. Nemes, a series of questions, soliciting all of the information included in Mr. Nemes' signed statement.  (Tr. at 36-38).  Mr. Berns took notes, but did not indicate to the employees that they would be asked to sign a document.  (Tr. at 38-39).  Later, Mr. Ruggiero presented the document to Mr. Nemes to sign.  (Tr. at 40-41).  He denies telling Mr. Nemes to "review the document quickly and sign it even quicker," and contends that Mr. Nemes spent five minutes reviewing it.  (Tr. at 41).

<u>Discussion</u>

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 100 (1981).  In <u>Gulf Oil</u>, the Supreme Court directly addressed the standard for circumscribing contact with putative class members:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.  Only such a determination can

> ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing -- identifying the potential abuses being addressed -- should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

Id. at 101-02 (footnotes omitted); accord In re School Asbestos Litigation, 842 F.2d 671, 679-80 (3d Cir. 1988); Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 601-02 (2d Cir. 1986); Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559, 565 (D. Conn. 2011); Ralph Oldsmobile Inc. v. General Motors Corp., No. 99 Civ. 4567, 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001). As is implicit in the Supreme Court's reference to the "conduct of counsel and parties," Gulf Oil, 452 U.S. at 100, an order may limit communications by plaintiffs, defendants, or both, see Austen, 831 F. Supp. 2d at 567 ("[T]he principles set forth in Gulf Oil and other cases regarding a district court's authority to impose restrictions on communications with putative class members apply to restrictions on plaintiffs' communications and defendants' communications alike."); Ralph Oldsmobile, 2001 WL 1035132, at *2 ("Although Gulf Oil concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well."). And an order may be issued before a class is certified as well as after, though the

6

considerations warranting court intervention will differ. <u>See</u> <u>Castaneda v. Burger King Corp.</u>, No. C 08-4262, 2009 WL 2382688, at *5 (N.D. Cal. July 31, 2009); <u>Ralph Oldsmobile</u>, 2001 WL 1035132, at *2 ("[A] court's power to restrict communications between parties and potential class members, apply [sic] even before a class is certified."). The same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA. <u>See</u> <u>Hoffman-La Roche Inc. v.</u> <u>Sperling</u>, 493 U.S. 165, 171 (1989); <u>Brown v. Mustang Sally's</u> <u>Spirits & Grill, Inc.</u>, No. 12-CV-529, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012).

In general, communications that are litigation-neutral -- that do not alter the legal relationship between the defendants and members of a putative class -- are not subject to restriction. However, courts have a responsibility to restrict communications that are potentially coercive or misleading. <u>See</u> <u>Gulf Oil</u>, 42 U.S. at 104 ("We recognize the possibility of abuses in class-action litigation, and agree . . . that such abuses may implicate communications with potential class members."); <u>In re School</u> <u>Asbestos Litigation</u>, 842 F.2d at 680 ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of

7

representation and the administration of justice generally."). In
some circumstances where there is an ongoing and unequal business
or employment relationship between the parties, communications may
be deemed inherently coercive. See In re Currency Conversion Fee
Antitrust Litigation, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005)
(holding arbitration clauses proffered by defendant credit card
companies during litigation coercive and unenforceable where "the
potential class consisted of cardholders who depended on defendants
for their credit needs"); Ralph Oldsmobile, 2001 WL 1035132, at *4
(finding defendant's request for releases from putative class
members potentially coercive where "potential class members depend
upon the defendant for information, supplies, and credit" and where
"[t]heir continued success and, indeed, existence may depend upon
[defendant's] good will"). Furthermore, a communication may be
coercive where the defendant interferes with participation by
potential class members in the lawsuit or misleads them by failing
to reveal how some proposed transaction might affect their rights
in the litigation. See Goody v. Jefferson County, No. CV-09-437,
2010 WL 3834025, at *3 (D. Idaho Sept. 23, 2010) (requiring
corrective notice where defendant's communications with potential
class members caused confusion about right to join suit); In re
Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d at
254 ("[D]efendants' unsupervised communications were improper

because they sought to eliminate putative class members' rights in this litigation.").

In this case, most of the factual disputes need not be resolved because they are not material to the issue of whether the defendants' communications with potential opt-in plaintiffs were coercive.   The defendants were entitled to obtain information relevant to this litigation by interviewing their employees. Whether they correctly recorded the employees' responses is relevant to whatever weight might be given to an employee's testimony at some later time, but that issue need not be decided now.

However, it was inherently coercive for the defendants to solicit from each employee a statement that he does not have a claim for unpaid wages.   To be sure, the parties agree that such a statement does not operate as a binding waiver of rights under the FLSA.   (Letter of Joseph M. Labuda dated Feb. 25, 2013; Letter of D. Maimon Kirschenbaum dated March 1, 2013).   But an employee who signs such a statement does not necessarily understand such legal subtleties and may well believe that, having signed the statement, he is precluded from opting in to this litigation.   Furthermore, an employee could well sign such a statement without full recognition of the extent of his rights and potential claims under the FLSA. That Mr. Nemes opted in to the case after signing the statement is

hardly determinative, as other employees may be less resolute and more likely to be deterred.

The appropriate remedy, then, is to require notice alerting employees that they have not waived any FLSA rights and to extend the period within which, armed with that knowledge, employees may opt in to this lawsuit.  No broader proscription on the defendants' communications with their employees is warranted.

Conclusion

For the reasons discussed above, the plaintiffs' application is granted to the extent that (1) the defendants shall provide notice to their employees that the employees have not waived any claims for unpaid wages by virtue of having signed the statements at issue, and (2) the opt-in period shall be extended until thirty (30) days after the notice is disseminated.  Within two weeks of the date of this order, counsel shall submit a joint proposal with respect to the form of the notice and manner of its distribution and shall identify any remaining disputes.

SO ORDERED.

JAMES C. FRANCIS IV
UNTIED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 12, 2013

10

Copies mailed this date:

D. Maimon Kirschenbaum, Esq.
Matthew D. Kadushin, Esq.
Joseph & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, NY 10017

Joseph M. Labuda, Esq.
David Berns, Esq.
Milman Labuda Law Group, PLLC
3000 Marcus Ave.
Suite 3W3
New Hyde Park, NY 11042